**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CECIL BURKHALTER AND
CYNTHIA KIND,

       CASE NUMBER: 08-11092

    Plaintiffs,

v.          HON. MARIANNE O. BATTANI

STATE FARM FIRE AND
CASUALTY COMPANY,

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 8). The Court heard oral argument on August 1, 2008, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, the Court **DENIES** Defendant's motion.

**I. INTRODUCTION**

On March 21, 2007, a fire destroyed the home of Plaintiffs, Cecil Burkhalter and Cynthia Kind. The two are joint owners of the home located in Romulus, Michigan, where they resided with their four children. Defendant, State Farm Fire and Casualty Company (State Farm) insured the house and its contents. Under the homeowners policy, State Farm paid additional living expenses when the family relocated to a hotel for four months, the cost of rebuilding the home, and a portion of the personal property loss claim.

1

State Farm requested Plaintiffs fill out a loss of personal property form listing every item of personal property loss, including the date of purchase and the cost of each item. Plaintiffs submitted a 90-page contents inventory report totaling $324,660.46. More than half of the items are alleged to have been purchased during the year prior to the fire. Def.'s Ex. D.

Defendant subsequently requested that Plaintiffs submit to an examination under oath (EUO). During the examination, State Farm questioned Plaintiffs about sources of income and requested all necessary documentation in support. Plaintiffs testified they purchased their personal property using cash. Upon further questioning about his income in 2006, Burkhalter testified it was "thirtyish, maybe, on the record and it's hard to say off the record. I mean I do a lot of cash business. A lot." Def.'s Ex. E at 12.

After Burkhalter's response, Defendant asked a follow-up question, and counsel for Burkhalter intervened. The attorneys then agreed to go off the record. Id. at 12, 13. Although Plaintiffs did answer additional questions about their sources of income off the record, they refused to produce copies of their individual tax returns pursuant to their attorney's advice. Plaintiffs' counsel objected to producing the records, arguing it is privileged, immaterial to personal property loss, and that the production of such information violated Plaintiffs' Fifth Amendment Right against self-incrimination.

State Farm seeks dismissal of Plaintiffs' personal property claim with prejudice. Defendant maintains Plaintiffs did not comply with the provisions of their insurance policy and forfeit any right to coverage.

## II. STANDARD OF REVIEW

Rule 56 states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show that it would prevail on the issue even if all factual disputes are conceded to the non-movant. Additionally, for the purposes of deciding on a motion for summary judgment, a court must draw all inferences from those facts in the light most favorable to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Accordingly, in the instant case, as this Court evaluates the motion at issue, it credits the non-moving party's factual account whenever that account clashes with the moving party's. The Court is mindful that the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but... must set forth specific facts showing that there is a genuine issue for trial" Anderson, 477 U.S. at 248 (internal quotations and citation omitted).

### III. ANALYSIS

The parties disagree as to whether the Plaintiffs substantially complied with the terms of the contract, and if they did not, whether their noncompliance is a bar to recovery. The focus of the dispute is unwillingness to answer certain questions regarding their income under oath and their failure to produce copies of their tax returns.

3

Michigan law governs the dispute, and basic contract rules of interpretation are used to determine whether coverage exists under insurance policies. An insurance contract must be read as a whole and meaning given to all terms. Auto-Owners Ins. Co. v. Churchman, 489 N.W.2d 431, 433 (Mich. 1992).

The terms of this contract specifically outline the duties of the insured after a loss. It requires that a party submit to examinations under oath and provide records and documents as requested. See Def.'s Ex. A, Homeowners Policy, Conditions, 1.d. (2), (3). These provisions allow the insurer a reasonable opportunity to investigate the possibility of fraudulent claims.

Nevertheless, under Michigan law, a deviation from the terms of the contract is not enough to find a failure of performance.

> Imperfections in the matters of details which do not constitute a deviation from the general plan do not prevent the performance from being regarded as substantial performance. On the other hand, where the deviations or alterations are such as would essentially change the terms of performance, they will be considered as a failure of performance.

Gibson v. Group Ins. Co., 369 N.W.2d 484, 486 (Mich. Ct. App. 1985) (quoting 6A Michigan Law & Practice, Contracts, § 314, pp. 315-316 (footnotes omitted)). The facts in Gibson are similar, and the analysis instructive. As is the case here, the claimant's home had been destroyed by fire. Similarly, the claimant in Gibson refused to give information about his financial status. Moreover, Gibson lied about his place of employment. Some time later, Gibson revealed that he earned money "on the streets." Id. at 485-86. The insurance company advanced the same argument advanced by State Farm in the instant case: the insured's failure to "submit to a full and complete examination as to all material facts as required by the contract since he asserted his

4

Fifth Amendment privilege against self-incrimination during the investigation" required summary judgment. Id. at 486. The state appellate court rejected the argument, holding that the lower court properly denied summary judgment.

> Even though the lack of specificity with regard to plaintiff's assets reduces the insurer's ability to investigate the incident, plaintiff made no attempt to conceal the general source of money at his disposal. Under the circumstances set forth in this case, plaintiff substantially performed his obligation to cooperate with the investigation, and, therefore, under Michigan law, he did not forfeit his contractual rights.

Id. (citations omitted). The case before this Court is analogous. Burkholder did not conceal the general source of money at his disposal. His concealment merely went to his conduct relative to the Internal Revenue Service. Certainly, financial information is relevant to an insurer's investigation, and "courts have allowed the introduction of evidence concerning financial condition that is probative of specific financial problems, deterioration in financial condition, or to rebut portrayal of financial condition." Smith v. Michigan Basic Property Ins. Ass'n., 490 N.W.2d 864, 870 (Mich. 1992) (deciding that evidence of an insured's financial condition is admissible to prove motive or other purposes). Defendant is free to pursue this matter at trial. See Steele v. Great American Insurance Co., No. 87-1327, 1988 WL 66713 (6th Cir. June 29, 1998) (reversing lower court's award of judgment to the insurance company based on the claimant failed to identify the supplier of her extra claimed source of income or assets").

The Court is not persuaded that the decision In Thomson v. State Farm Ins. Co., 592 N.W.2d 82, 86 (Mich. Ct. App. 1998), warrants a different outcome. The facts are distinguishable in that the insured in Thomson refused to submit to an EUO. The Thomas Court articulated the standard for finding wilful noncompliance as follows:

5

> 'wilful noncompliance' in the context at hand refers to a failure or refusal to submit to an EUO or otherwise cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a deliberate effort to withhold material information or a pattern of non-cooperation with the insurer.

Id. at 87. The court concluded, "the burden henceforth is on the insured to demonstrate that the insured has not deliberately withheld material information. This burden will be an extraordinarily difficult burden to meet." Id. at 88.

In assessing the facts of this case under the Thomas standard, the Court finds Plaintiffs' failure to answer specific questions about their financial condition on the record does not constitute a deliberate and intentional withholding of information from State Farm or a pattern of noncooperation as a matter of law. Plaintiffs, unlike the plaintiffs in Thomas, did not fail to appear at the EUO. Plaintiffs' off-the-record remarks and estimates of income sufficiently detail sources of income for Defendant's investigation. Although Plaintiffs failed to comply with the precise language of the insurance policy, they need only comply substantially. Even if Plaintiffs' refusal to provide tax documents hampered State Farm's investigation, it did not foil the investigation. Accordingly, the Court cannot say, as a matter of law, that Plaintiff's failure to answer every question regarding his financial status on the record, requires forfeiture of their contractual rights. Nor does their refusal to supply tax documents, in light of their indication that their tax documents do not reflect their income. Because the Court has found that Plaintiffs substantially complied, it does not address the issue of wilfulness.

## IV. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**

                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT COURT JUDGE

DATED: September 8, 2008

**CERTIFICATE OF SERVICE**

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                              s/Bernadette M. Thebolt
                                              Deputy Clerk